McBRIDE, Judge.
This is a mandamus proceeding whereby relator, who alleges that he has completed the work under his contract with the Parish Council of Jefferson Parish for the construction of an extension of the Millaudon Canal to the vicinity of Bayou Segnette in Consolidated Drainage District No. 1, seeks to coerce the respondent, Director of Department of Finance, Parish of Jefferson, to pay him the amount due under said contract, to-wit: $17,284. After trial, the alternative writ of mandamus was made peremptory, and, accordingly, judgment was rendered in favor of relator ordering and directing such payment to be made by respondent who has appealed suspensively without furnishing an appeal bond. We denied appellee’s motion to dismiss the appeal holding that appellant was exempted from the requirement of fur *468 nishing an appeal bond by the provisions of LSA-R.S. 13:4581. See 151 So.2d 377.
On November 2, 1961, the Parish Council (hereinafter referred to as “the Council”) of the Parish of Jefferson, acting as the governing authority of the Department of Sanitation, passed a resolution directing the Purchasing Division of the Department of Finance to secure sealed letter bids for the construction of the extension to the Mil-laudon Canal, according to plans and specifications of T. Edward Ernst, Consulting Engineer. In compliance with the foregoing, said engineer, by letter dated November 9, 1961, solicited and invited bids from eight contractors for the project, and in response received five bids of which relator’s was the lowest. These facts were made known to the Council which on November 16, 1961, passed a resolution authorizing the acceptance of relator’s bid and the chairman of the Council, as authorized, executed a formal contract with relator.
On January 26, 1962, the project engineer, T. Edward Ernst, addressed a letter to the Director of the Department of Sanitation, sending a copy thereof to respondent, advising that a joint inspection of the work had been made by his office and a representative of the Sanitation Department which disclosed that the contractor had performed the work as required and had fulfilled the terms of the contract with the exception of a few minor deviations which the engineer thought unimportant enough to waive. The Department concurred in the waiver and the contract was declared completed.
On January 31, 1962, the engineer unconditionally certified that the contract had been 100 percent completed and approved payment to the contractor of $17,284, less 10 percent to be retained during the “lien period.” The Council on August 9, 1962, passed a resolution which, besides accepting the work, authorized the contractor to file a copy thereof with the Clerk of Court to evidence the completion and acceptance of the job. The resolution further authorized and directed the Finance Director (respondent) to pay the contractor the contract price less 10 percent thereof which was to be retained until the expiration of the 45-day lien and privilege period; conditioned upon receipt of a proper lien and privilege certificate from the Clerk of Court, payment to the contractor of tire final balance was authorized and directed. On October 1, 1962, relator procured a lien and privilege certificate which showed no liens had been filed and no inscriptions appeared on the certificate save the recordation and acceptance of the contract.
Respondent on September 7, 1962, issued a check in the arbitrary amount of $9,387 to the contractor, contending that the job had never been completed and that the amount of the check represented the actual value of the work performed. Relator refused the check and instituted the present proceeding.
After denying all of relator’s allegations “for the lack of sufficient information to justify belief” respondent set up several so-called special defenses, namely: (1) That the resolution upon which relator based his cause of action is invalid “since the Council can only direct the Parish President, under the Jefferson Parish Charter, Article 3, Section 3.03(c)”; (2) That the Council is empowered to order the expenditure of parish funds only by ordinance and not by resolution under Art. 2, Sec. 2.07 (A) ; (3) That the entire contract is null, void and illegal under Art. 4, Sec. 4.02(G) ; (4) That the duties of the Finance Director are not strictly ministerial under Art. 4, Sec. 4.02(A) (5); (5) That the contract was never submitted to respondent for pre-audit under Art. 4, Sec. 4.02(A) (5).
Respondent in brief and argument seeks to raise other objections to relator’s proceeding but these we must disregard because the law regards a proceeding for mandamus as summary in nature and the answer thereto must contain a full written defense. LSA-C.C.P. art. 3783; State ex rel. Code v. Code, 215 La. 485, 41 So.2d 62; State ex rel. Brenner v. Noe, 186 La. 102, *469 171 So. 708; State ex rel. Louisiana Trust & Savings Bank v. Board of Liquidation of State Debt, 135 La. 571, 65 So. 745; Shaw v. Howell, 18 La.Ann. 195.
Relator is clearly entitled to resort to the writ of mandamus. If it could be said that he is to be relegated to the bringing of an ordinary suit, an anomalous situation would develop, for as the above recitation of fact shows, the Parish Council has unqualifiedly approved and accepted the work and authorized payment to the contractor. Besides it being cumbersome and entailing unnecessary delay, we are at a loss to know against whom an ordinary action would be brought. The Council readily admits the indebtedness of the Parish of Jefferson to relator and any ordinary suit the contractor should bring against the parish for judgment for the contract price would he superfluous. And no moneyed judgment could be obtained against the Finance Director even if an ordinary action were to be brought against said official. LSA-C.C.P. art. 3862 provides that a writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. According to LSA-C.C.P. art. 3863 a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. Even before the advent of the Code of Civil Procedure the jurisprudence was to the effect that a judge may, in his discretion, issue a writ of mandamus, although the complainant had other means of relief, if the slowness of an ordinary-proceeding would be likely to cause such a delay as to hamper the administration of justice. State ex rel. Braswell v. Hallam, 150 La. 922, 91 So. 298; Lanaux v. Recorder of Mortgages, 36 La.Ann. 974. It is not uncommon for a party who has a claim against the state or other public body for salary of an officer or for money due on other accounts to have his right to payment adjudicated through and by means of a mandamus against the auditing officer. State ex rel. New Orleans Canal & Banking Co. v. Heard, 47 La.Ann. 1679, 18 So. 746, 47 L.R.A. 512; Shaw v. Howell, supra; Parker v. Robertson, 14 La.Ann. 249. The writ may also be employed to reach and correct an arbitrary or capricious abuse of discretion by public boards or officials. State of Louisiana ex rel. Torrance v. City of Shreveport, 231 La. 840, 93 So.2d 187.
There is no validity to any of the defenses raised in answer. We will discuss them in the order in which they are pleaded.
Respondent takes the position that the resolution of the Council which ordered payment to the contractor is without force or effect “since the Council can only direct the Parish President under the Jefferson Parish Charter Art. 3, Sec. 3.03(c).” The provision of the charter of the Parish of Jefferson (see Art. 14, § 3(c), Const.1921) to which counsel refers provides “except for the purpose of inquiry, the Council and its members shall deal with administrative officers and employees solely through the Parish President.” Such provision does not strip relator of and cannot affect a legal right to proceed directly against the proper officer of the Parish of Jefferson to enforce payment.
Respondent also contends that the resolution requiring the Finance Officer to pay is without force or effect because Art. 2, Sec. 2.07(A) of the charter specifically provides that “every act (of the Parish Council) shall be by ordinance which * * * provides for * * * the expenditure of funds * *
Relator has no concern with this particular provision of the charter. The contract was confected with the Parish Council pursuant to the provisions of Art. 4, Sec. 4.02(G), all of which were adhered to and complied with, viz.:
“Contracts for public improvements and purchases of supplies, materials, and services other than professional for the parish or for any of its departments, offices, agencies, or special dis *470 tricts shall he made on the basis of specifications and competitive bids. Formal sealed bids shall be secured for all such parish purchases when the transaction involves the expenditure of $2,000 or more. The transaction shall be evidenced by written contract submitted to and approved by the Council. * * * ”
The provisions of paragraph 3-10 of the specifications (which are part of the contract) vest final authority in the engineer to decide all questions as to the quality and acceptability of materials furnished and work performed and as to the manner of performance and rate of progress of the work. The engineer has sole authority to determine the amount and quality of the work performed.
The acceptance by the Council was predicated upon the engineer’s certification that the contract was 100 percent completed. The Council’s authority to accept appears from paragraph 3-41 of the specifications which reads:
“When all operations of every nature, covered by these specifications and by the drawings to which they refer, and the Contract based thereupon, with all amendments, alterations and changes made in connection therewith have been executed to the satisfaction of the Engineer, the Owner will issue a written acceptance of the work to the Contractor who will immediately thereafter file same with the Recorder of Mortgages in the Parish in which the work is being done, and this shall be the only form of acceptance binding upon any party or parties to these operations.”
The word “owner” used in paragraph 3-41 means “governing authority.” See Sec. 1(h) of specifications.
See, also, the General Public Contract Law which contemplates that the acceptance of the work shall be by the governing authority. LSA-R.S. 38:2242.
The evidence being to the effect that the contract for the extension to the canal was entered into, executed, and accepted by the Council on behalf of the parish, all in accordance with the provisions of the Parish of Jefferson Home Rule Charter and the contract and specifications, the contractor is now entitled to payment for performing his contract regardless of whether a resolution, ordinance, motion or other proceeding authorizing the Finance Director to pay was passed or adopted by the Council. The fact there was no formal ordinance directing payment does not have the effect of relieving the Finance Director of the duty of making-settlement for the claim.
It is argued that the duties of the Finance Director are not strictly ministerial under Art. 4, Sec. 4.02 of the charter. Counsel points to paragraph A thereof which provides there shall be a Department of Finance headed by a Finance Director appointed by the Parish President who shall’ (4) have custody, as ex-officio parish treasurer, of all public funds belonging to or controlled by the parish or any parish department, and his duties shall include:
“(5) To pre-audit all contracts, orders, and all other documents which incur financial obligation * * * to determine availability of funds and the legality of all financial transactions.”
Section 4.02(H) provides in part:
“There shall be established * * *' a system * * * which assures by preaudit the legality and integrity of all financial transactions. * * * ”
Any dereliction of duty there may-have been on the part of the parish officials in not making a pre-audit of relator’s contract cannot jeopardize relator’s right to exact payment for his work nor can such dereliction serve as a means of permitting the Parish of Jefferson to unjustly enrich itself at relator’s expense. The non-compliance-with the charter provisions respecting a pre-audit of the contract is a matter which ad *471 dresses itself to the authorities of the parish as it involves the internal affairs thereof.
Upon completion and acceptance of the job, our opinion is that the duty of the •respondent Finance Director to pay was purely ministerial. No power is granted him by charter provision or by law or by the terms of the contract to decide whether the contract had been fully executed or whether the work done is satisfactory and certainly he has not the right or privilege to arbitrarily tender to the contractor an amount less than the contract price.
The judgment is affirmed.
Affirmed.