960 So.2d 1243 (2007)
Tom OWENS and James Wall, Plaintiffs-Appellants,
v.
SOUTHWEST OUACHITA WATERWORKS, INC., and Willie Smith, Defendant-Appellee.
No. 42,278-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1244 Paul Loy Hurd, Ouachita, for Appellant.
DeLaup, Schexnayder & Miranda by Albert Collins Miranda Stephanie L. Cook, for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
DREW, J.
Tom Owens and James Wall, plaintiffs-appellants, are disgruntled shareholders of the defendant nonprofit corporation. Defendant Willie Smith is the corporation president. Owens and Wall appeal the trial court's denial of their request to copy, duplicate, and extract corporate records.
We reverse and render, finding that the ability to inspect corporate records, without the right to copy, duplicate, and extract, would be a useless, hollow, meaningless, and illogical right. Because of the unsettled nature of this unusual dispute, however, we deny the assessment of penalties.

DISCUSSION
At issue is whether a right to copy, duplicate and extract from corporate records is provided to a shareholder of a nonprofit corporation.
La. R.S. 12:223, which pertains to nonprofit corporations, states, in relevant part:
C. Every shareholder and voting member may examine in person, or by agent or attorney, at any reasonable time, the records of the corporation listed in subsection A of this section. (Emphasis supplied)
La. R.S. 12:103, which pertains to business corporations, states, in relevant part:
D. (1)(a) Upon at least five days' written notice any shareholder, except a business competitor, who is and has been the holder of record of at least five percent of the outstanding shares of any class of a corporation for at least six months shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation and to make extracts therefrom.
(Emphasis supplied)
In our examination of this issue, we are mindful of La. C.C. art. 9, which states:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Further guidance has been provided by the supreme court's discussion of statutory interpretation in Fontenot v. Chevron *1245 U.S.A. Inc., 95-1425, pp. 7-8 (La.7/2/96), 676 So.2d 557, 562:
[T]he paramount consideration for statutory interpretation is the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. However, "[w]hen the literal construction of a statute produces absurd or unreasonable results `the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.'" Green v. Louisiana Underwriters Insurance Co., 571 So.2d 610, 613 (La.1990). La. Civil Code art. 9 instructs that a clear and unambiguous law shall be applied as written "when its application does not lead to absurd consequences."
Appellants interpret La. R.S. 12:223 to argue that the right of examination must necessarily include the right to copy, duplicate, and extract for the examiners to derive any benefit from the right to examine. Appellees contend that La. R.S. 12:223 allows shareholders in nonprofit corporations the right only to examine, whereas La. R.S. 12:103 specifically allows business corporation shareholders the right to extract. Appellees further point out that the legislature could easily have tracked the same language in both statutes.
Since there is little jurisprudence that assists us in deciding this controversy, we have applied a little common sense to reach a reasonable result. For the right to examine to have any meaning, the right to copy, duplicate, and extract must necessarily be included in the term, unless these plaintiffs can find a savant graduate of a memory course. It is bizarre that the records should be snatched away the moment the plaintiffs might pull out a pencil, pen, scanner, tape recorder, piece of slate, chalk, computer, or some other method of assembling the data examined.
Appellees argue that because the legislature did not provide for extraction of data, these plaintiffs are forbidden from doing so. On the other hand, nowhere has the legislature prohibited the copying, duplicating, or extracting of examined records. What the plaintiffs seek here is reasonable and logical. A corporation belongs to the shareholders.
When defense counsel were asked to recite the perceived harm of the requested copying, duplicating, or extracting, the responses given were that:
 the legislature did not provide for it;
 when plaintiffs were in control of the corporation, they were quite unreasonable in their dealings with Smith; and
 the other shareholders were entitled to their privacy.
We have already dealt with the first proposition. We also reject the second argument (against allowing extraction of the materials), because two wrongs do not make a right.[1] The third rationale for disallowing extracts can be easily dealt with by the learned trial court, should anyone be aggrieved by the plaintiffs' misuse of this information gained by the utilization of the corporate records.
Perhaps the reason that there is virtually no relevant jurisprudence is because this is a no-brainer, logically. Having said this, the statutory language is indeed puzzling. While we certainly understand the basis for the trial court's ruling, we disagree with its ultimate interpretation. There is no justification, however, for the imposition of penalties here.
*1246 We reverse and render, authorizing plaintiffs to inspect and abstract the corporate records of this nonprofit corporation in a reasonable manner and at reasonable times and places, all as directed by the trial court.

DECREE
The judgement below is reversed. The request for penalties is denied. All costs of this appeal are assessed against appellees.
REVERSED AND RENDERED.
PEATROSS, J., concurs.
NOTES
[1] A legal and moral concept conceived by the more enlightened of the earliest hunter-gatherers.